Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Shahin Rezvani (SBN 199614)
Shahin.rezvani@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1860
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHELSEA GARLAND, ESTELITA REY, and ZACHARY WILLIAMS, individually, and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

MEAD JOHNSON & COMPANY, LLC, a Delaware limited liability company; MEAD JOHNSON NUTRITION COMPANY, a Delaware corporation; and RECKITT BENCKISER LLC, a Delaware limited liability company,

Defendants.

**Case No.: 3:25-cv-03437-H-JLB**

Hon. Marilyn L. Huff

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

(1) Violation of California's Unfair Competition Law
(2) Unjust Enrichment

**DEMAND FOR JURY TRIAL**

*Removed from San Diego County Superior Court, No. 25CU059493C*

*Originally filed Nov. 3, 2025*

*Removed December 4, 2025*

## INTRODUCTION

1. Plaintiffs Chelsea Garland, Estelita Rey, and Zachary Williams ("Plaintiffs"), bring this Complaint individually and on behalf of all persons against Mead Johnson & Company, LLC; Mead Johnson Nutrition Company; and Reckitt Benckiser LLC (collectively, "Mead Johnson" or "Defendants") to seek redress for Defendants' unlawful practices in labeling and marketing Enfagrow PREMIUM Toddler Nutritional Drink and Enfagrow NeuroPro Toddler Nutritional Drink products (collectively, "the Products").

2. Defendants labeled and marketed the Products with nutrient-content and fortification-related representations that are prohibited for foods intended for children under two years of age under FDA regulations (as incorporated into California's Sherman Law), rendering the Products misbranded as labeled and sold.

3. As a result of Defendants' unlawful labeling and sale of the Products, Plaintiffs and Class members paid a price premium—*i.e.,* they paid more than they otherwise would have paid absent Defendants' unlawful labeling and marketing, entitling them to restitution.

## THE PARTIES

**<u>Plaintiff Chelsea Garland</u>**

4. Plaintiff Chelsea Garland ("Plaintiff Garland") is a California citizen residing in San Diego, California.

5. In or around May 2023, and for about six (6) months thereafter, Plaintiff Garland purchased the Products for her then one (1) year old child from Target, Vons, Walmart, Ralphs, and/or Albertsons in California.

6. At the time of Plaintiff Garland's purchases, Defendants were selling the Products with labeling and marketing that included nutrient content and fortification-related representations prohibited for foods intended for children under two years of age under FDA regulations incorporated into California law,

rendering the Products misbranded as labeled and sold.

7. Plaintiff Garland paid money for the Products at retail prices that included a price premium attributable to Defendants' unlawful labeling and marketing. Absent Defendant's unlawful labeling and marketing, Plaintiff Garland would have paid less for the Products or purchased an alternative product, and she seeks restitution of the amount she overpaid. But for Defendants' unlawful labeling and marketing, Plaintiff Garland would not have purchased the Products, would have purchased an alternative product, or would have paid less for the Products.

**Plaintiff Estelita Rey**

8. Plaintiff Estelita Rey ("Plaintiff Rey") is a California citizen residing in Valley Village, California.

9. In or around 2022, and for about one (1) year thereafter, Plaintiff Rey purchased Enfagrow for her then one (1) year old child from Target and other retailers in California.

10. At the time of Plaintiff Rey's purchases, Defendants were selling the Products with labeling and marketing that included nutrient-content and fortification-related representations prohibited for foods intended for children under two years of age under FDA regulations incorporated into California law, rendering the Products misbranded as labeled and sold.

11. Plaintiff Rey paid money for the Products at retail prices that included a price premium attributable to Defendants' unlawful labeling and marketing. But for Defendants' unlawful labeling and marketing, Plaintiff Rey would not have purchased the Products, would have purchased an alternative product, or would have paid less for the Products.

**Plaintiff Zachary Williams**

12. Plaintiff Zachary Williams ("Plaintiff Williams") is a California citizen residing in Highland, California.

13. In or around October 2022 and about two (2) to three (3) times per month for about six (6) months thereafter, Plaintiff Williams purchased the Products for his then one (1) year old child from Albertsons in California.

14. At the time of Plaintiff Williams's purchases, Defendants were selling the Products with labeling and marketing that included nutrient-content and fortification-related representations prohibited for foods intended for children under two years of age under FDA regulations incorporated into California law, rendering the Products misbranded as labeled and sold.

15. Plaintiff Williams paid money for the Products at retail prices that included a price premium attributable to Defendants' unlawful labeling and marketing. But for Defendants' unlawful labeling and marketing, Plaintiff Williams would not have purchased the Products, would have purchased an alternative product, or would have paid less for the Products.

**Defendants Mead Johnson & Company, LLC; Mead Johnson Nutrition Company; and Reckitt Benckiser LLC**

16. Defendant Mead Johnson & Company, LLC is a limited liability company organized and in existence under the laws of the State of Delaware and registered to do business in the state of California. Mead Johnson & Company, LLC is headquartered in Evansville, Indiana.

17. Defendant Mead Johnson Nutrition Company is a corporation organized and in existence under the laws of the State of Delaware and registered to do business in the states of California. Mead Johnson Nutrition Company is headquartered in Evansville, Indiana.

18. Defendant Reckitt Benckiser LLC is a limited liability company

organized and in existence under the laws of the State of Delaware and registered to do business in the state of California. Reckitt Benckiser LLC is headquartered in Parsippany, New Jersey.

## JURISDICTION

19. This is a class action.

20. Members of the proposed Class number more than 100 and at least one plaintiff and one defendant are citizens of different states.

21. There are at least 100 members in the proposed class, and the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

22. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

23. The Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to this Court's jurisdiction. The Court has personal jurisdiction over Defendants because they conduct substantial business in this District and discovery will show that significant conduct involving Defendants giving rise to the Complaint took place in this District.

## VENUE

24. Venue is proper pursuant to 28 U.S.C. § 1391 because the conduct giving rise to this lawsuit occurred here and Defendants are subject to personal jurisdiction here by conducting business within the State of California.

## FACTUAL ALLEGATIONS

25. Defendants manufacture, distribute, market, advertise, and sell toddler drink products under the brand name "Enfagrow." To fetch a price premium, Defendants, in their marketing and packaging, echo parents' well known nutritional concerns regarding their children—especially those children under two years of age—by making claims and graphics about brain development and immune health. These claims are intended to create the impression in parents that they are selling premium products—one needs not look further than the products

very names: Enfagrow PREMIUM Toddler Nutritional Drink, and Enfagrow NeuroPro Toddler Nutritional Drink. And while Plaintiffs here do not seek to recover restitution for any mere puffery in Defendants' marketing, when Defendants' claims go beyond puffery and into specific nutritional content claims and other fortification-related representations that are purposely prohibited by FDA regulations for use in products intended for children under two years of age, such marketing and labeling becomes unlawful under California law.

26. FDA regulations explicitly prohibit certain nutrient content claims on foods intended for children under the age of two. 21 C.F.R. § 101.13(b)(3), and Defendants' Products are, indeed, intended for those children. Defendants designate the intended age for The Products on the front label, with statements including "Toddler" and "1+ Years." And Defendants market and sell The Products with packaging that predominately, uniformly, and consistently makes nutrient content claims and fortification-related representations on the principal display panel of The Products' labels. A non-exhaustive demonstrative of the Products' labeling showing the nutrient content claims and fortification-related representations is attached hereto as **Exhibit 1**.

27. Despite their unlawfulness, Defendants nevertheless make nutrient content claims, including fortification-related representations, on the front of the Product labels. For example, the Products state on the front label, "IMMUNE HEALTH Dual Prebiotics & Vitamins," "Supports BRAIN DEVELOPMENT Omega-3 DHA & Iron," and "22 NUTRIENTS to help support growth."

28. Defendants deliberately included these unlawful nutrient content and fortification-related representations on The Products, which are intended for children under two years of age, in order to charge and collect a price premium from consumer parents, including Plaintiff and the members of the Class. Plaintiffs bring this lawsuit to recover restitution for themselves and the members of the class who paid price premiums for these unlawfully misbranded products.

**Federal and State Regulations Governing Food Labeling**

29. The Food and Drug Administration regulates nutrition content labeling. According to these regulations, "no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age," subject to certain exceptions not applicable here. 21 C.F.R. § 101.13(b)(3).

30. According to the regulations, nutrient content claims can be expressed or implied. 21 C.F.R. § 101.13(b)(1), 21 C.F.R. § 101.13(b)(2).

31. An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food." 21 C.F.R. § 101.13(b)(1). Further, where information that is required or permitted to be "declared in nutrition labeling, and that appears as part of the nutrition label . . . is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims." 21 C.F.R. § 101.13(b)(1).

32. An implied nutrient content claim is any claim which: "(i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., "healthy, contains 3 grams (g) of fat")." 21 C.F.R. § 1013(b)(2).

33. The FDA explicitly regulates certain nutrient content claims such as "more" claims. "More" claims use terms such as "more," "added," "plus," or synonyms to describe the level of a nutrient in a food. 21 C.F.R. § 101.54(e). Where the claim is based on a nutrient which has been added to the food, the food must comply with the FDA's Fortification Policy, as stated in 21 C.F.R. § 104.20. *See* 21 C.F.R. § 101.54(e)(ii).

34. The Fortification Policy only allows for fortification under

specific circumstances. The Fortification Policy goes on to list four circumstances where fortification is appropriate:

a. "[T]o correct a dietary insufficiency recognized by the scientific community. . ."

b. "[T]o restore such nutrient(s) to a level(s) representative of the food prior to storage, handling and processing. . ."

c. "[I]n proportion to the total caloric content. . . to balance the vitamin, mineral, and protein content…"

d. "[T]o avoid nutritional inferiority" when replacing a traditional food.

21 C.F.R. § 104.20(b)-(e).

35. Identical federal and California laws regulate the content of labels on packaged food and require truthful, accurate information on the labels of packaged foods. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. § 101, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed herein are applicable nationwide to all sales of packaged food products. Additionally, no state imposes different requirements on labeling of packaged food for sale in the United States.

36. California's adoption of food regulations which are identical to the federal regulations stems from the state's "historic police powers" to regulate food labeling, which long-predates the enactment of the FDCA. *See Plumley v. Massachusetts,* 155 U.S. 461, 472 (1894) ("if there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which … it is the protection of the people against fraud and

deception in the sale of food products."); *see also Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders.") (citation omitted).

37. Although California amended its food labeling laws in 1995 in response to the federal implementation of the 1993 Nutrition Labeling and Education Act, California's regulations of food labels predate the enactment of the Sherman Law. For example, the current Cal. Health & Safety Code § 110660 invoked herein states "[a]ny food is misbranded if its labeling is false or misleading in any particular." California originally enacted this regulation in 1939, previously found at Cal. Health & Safety Code § 26490. *See People v. 748 Cases of Life Saver Candy Drops*, 94 Cal. App. 2d 599, 607 (1949) (applying section 26490 prohibition on "labeling is false or misleading in any particular" in food labeling claim in 1949).

38. Under the FDCA, the term "misleading" covers labels that are technically true but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

39. Further in addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific numerated federal food laws and regulations. *See* California Health & Safety Code § 110660 (misbranded if label is misleading).

40. Under California law, a food product which is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

41. Representing the Products will provide certain health benefits by making unlawful nutrient content claims as Defendants' labels do is prohibited by

the aforementioned misbranding laws and regulations.

42. The regulations relating to nutrient content claims discussed herein are intended to ensure consumers are not misled as to the actual or relative nutritional value of food products.

**<u>Defendants' Marketing and Labeling of the Products Violates State and Federal Food Labeling Laws</u>**

43. The Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, *et seq.*, because the Products are intended for children less than two years of age and the Products' labels contain nutrient content claims.

44. As described above, the Products at issue in this case are intended for children one year and up as evidenced on the front labels and in the Product titles.

45. Beyond the Product labels, the Products are also sold in the "Baby Food" grocery store aisles, alongside infant formulas. On information and belief, Defendants direct retailers to sell the Products in the baby food aisle.

46. Defendants misbrand the Products by making nutrient content claims and fortification-related representations which are strictly prohibited by the FDA for products intended for children under two years of age in order to fetch a price premium for their products from consumers.

47. The Product labels contain nutrient content claims which are unlawful. As shown in **Exhibit 1**, the Product labels prominently state nutrient content claims on the front label such as "22 NUTRIENTS to help support growth," "IMMUNE HEALTH Dual Prebiotics & Vitamins," and "Supports BRAIN DEVELOPMENT Omega-3 DHA & Iron." Further, at least one of the Products' back labels states: "Big on value, Enfagrow has **22 nutrients** to support your toddler's optimum development (emphasis in original)" The terms "support growth" in conjunction with "22 NUTRIENTS," "IMMUNE HEALTH" in

conjunction "Dual Prebiotics & Vitamins," "BRAIN DEVELOPMENT" in conjunction with "Omega-3 DHA & Iron" and "optimum development" in conjunction with "**22 nutrients** (emphasis in original)" are each implied nutrient content claims. *See* 21 C.F.R. § 101.13(b)(2); *FDA, Guidance for Industry: A Labeling Guide for Restaurants and Other Retail Establishments Selling Away-From-Home Foods*, 2008 WL 2155726, at *10 (April 2008) (explicit statement about a nutrient alongside synonyms of healthy are implied nutrient content claims).

48. At least one of the Products includes a "more" claim as defined in 21 C.F.R. § 101.54(e). For example, the Enfagrow PREMIUM Toddler Nutritional Drink states: "[i]t has Omega-3 DHA and Iron to help nourish your toddler's brain development, plus dual prebiotics and vitamins, including vitamin C, and zinc to help support immune health." In the context of the claim, "including" is a synonym for "added." Thus, it is a "more" claim, which is a nutrient content claim.

49. The ingredients of the Products with "more" claims include "Ascorbic Acid" and "Zinc Sulfate." The "more" claims on these Products are based on a nutrient that has been added to the food, and the Products must comply with the Fortification Policy as stated in 21 C.F.R. § 104.20.

50. Foods intended for children less than two are prohibited from making such nutrient content claims. 21 C.F.R. § 101.13(b)(3). Therefore, the Products are accordingly misbranded.

51. The Products with "more" claims are also unlawfully fortified. None of the four sanctioned bases for fortification is present here. There is no recognition by the scientific community of a dietary insufficiency in Vitamin C or zinc. To the contrary, as the FDA has recognized, dietary deficiency of Vitamin C is "extremely rare in the United States." 56 FR 60624. In addition, per the National Institutes of Health, "[m]ost people in the United States consume adequate amounts of zinc"[1].

[1] *Zinc Fact Sheet for Health Professionals*, NAT. INST. OF HEALTH, https://ods.od.nih.gov/factsheets/Zinc-HealthProfessional/.

Defendants have not added Vitamin C or zinc to its Products to "restore" levels of nutrients to those of the Products before storage. The third basis for fortification relates to foods which are fortified to contain all 21 specified nutrients. *See* 21 C.F.R. § 104.20(d)(3). Defendants' Products do not contain all 21 nutrients. *See* **Exhibit 1**. The fourth basis for fortification is inapplicable because there is no basis on which to conclude the Products replace a traditional food. Therefore, the Products violate the Fortification Policy because none of the conditions for fortification have been met.

52. Reasonable consumers rely on the label claims to decide to purchase the Products for children under two years old. Reasonable consumers shopping in the baby food aisle of a grocery or online retailer see the Products alongside products intended for children as young as six months and purchase the Products for their toddler under the age of two.

53. The nutrient content claims on the Products mislead reasonable consumers into believing the Products will provide physical health benefits for their children, when in fact the Products are harmful.

54. The FDA has long warned nutrient content claims could be misleading. This is especially true in the context of children under two because there are different recommended daily nutrient intakes for children 0-12 months; 1-3 years; and 4 years and above.

55. The FDA described the purpose of nutrient content claim regulations to be "promoting sound nutrition for the nation's consumers." 56 Fed. Reg. 60421. The FDA relies on the USDA's development of Dietary Guidelines as the basis for encouraging and discouraging the "selection of foods containing low or high levels of certain nutrients as part of an overall diet." *Id.*

56. The FDA forbids nutrient content claims on products intended for children under two because "the agency lacks evidence that a more restrictive dietary pattern for other nutrients such as sodium or an increased intake for

nutrients such as fiber are appropriate and recommended for infants and toddlers." 56 Fed. Reg. 60421; *see* also 58 Fed. Reg. 33731, 33733. Although it has been nearly thirty years, not much has changed regarding the evidence as explained below.

57. At the time the regulation was implemented, there were Recommended Daily Intakes ("RDI") and Daily Recommended Values ("DRV") for most nutrients for children under two. *See* 58 Fed. Reg. 2302, 2305 (stating there are RDIs for children under two); 58 FR 2206, 2211 (providing the RDIs). Despite knowing the target daily intake of nutrients for these ages, the FDA concluded it would not be appropriate to promote nutrients on labels for this young group because "relatively little attention has been given" to the dietary patterns of children under two. 56 Fed. Reg. 60421; *see* also 60 Fed. Reg. 67184, 67191.

58. The same is true today. For example, there are still RDIs and DRVs for most nutrients for children under two. Just as in 1991, the RDIs and DRVs of nutrients is different for different ages, with a different set of values for children 0-12 months, 1-3 years old, and 4 and above. 21 C.F.R. § 101.9(c)(8)(4). And just as in 1991, in 2020 a USDA working group concluded "[d]eveloping recommended food patterns for infants and toddlers ages 6 to 24 months is challenging. . . in part because the scientific evidence for many questions is relatively scant." Dietary Guidelines Advisory Committee. 2020. *Scientific Report of the 2020 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Agriculture and the Secretary of Health and Human Services*. (hereinafter "2020 Scientific Report").[2]

59. Children under two have unique dietary needs because they are experiencing huge amounts of growth but eating relatively little solid food. Therefore, it is important children under two receive the "most nutrient dense foods

[2] U.S. Department of Agriculture, Agricultural Research Service, Washington, DC. Available at: https://doi.org/10.52570/DGAC2020.

available in the household." Dewey KG. *The challenge of meeting nutrient needs of infants and young children during the period of complementary feeding: an evolutionary perspective.* J Nutr. 2013 Dec;143(12):2050-4. doi:10.3945/jn.113.182527. Epub 2013 Oct 16. PMID: 24132575; PMCID: PMC3827643.

60. The American Academy of Pediatrics ("AAP") published a clinical report titled "Older Infant-Young Child 'Formulas'" in November 2023 about "the lack of standardization in nomenclature and composition as well as questionable marketing practices" of formulas directed at older infants and toddlers 6 to 36 months of age ("OIYCFs").[3] In it, the AAP explains "[m]arketing of products in this age group….is often based on vague concerns parents have that their child is not getting some needed micronutrients and that these are uniquely provided by OIYCFs." In fact, the AAP explained, the World Health Assembly has long recognized specialty formula milks for older infants as unnecessary and the AAP, as well as other expert organizations, have recommended "breastfeeding through 2 years of age or longer or whole cow's milk and other acceptable nonformula dairy sources in conjunction with appropriate complementary solid foods as nutritionally adequate."[4] Additionally, the AAP stated "[c]laims of brain development or immune function have incorrectly shown to influence parents' belief that OIYCFs are healthier than cow milk and promotes their intention to provide OIYCFs to their children."

61. Defendants' labeling and marketing of their Products capitalize on the exact concerns and beliefs the AAP describes. For example, the back label of Enfagrow PREMIUM Toddler Nutritional Drink states, "because [toddlers'] tastes and needs are changing at age 1, they may not be getting all the nutrients they

[3] Fuchs GJ, Abrams SA, Amevor AA, et al. American Academy of Pediatrics, Committee on Nutrition. Older Infant-Young Child "Formulas" Pediatrics. 2023; 152(5):e2023064050, available at: https://www.researchgate.net/publication/374896188_Older_Infant-Young_Child_Formulas (last accessed July 2, 2024).

[4] *Id.*

require. That's why Enfagrow Premium Toddler Nutritional Drink complements their diet with 22 nutrients including brain-building DHA and iron, plus vitamins and prebiotics to support immune health." As a further example, the front label includes the terms "IMMUNE HEALTH" and "BRAIN DEVELOPMENT" within colorful graphics meant to catch the eye. By echoing the nutritional concerns of parents and including claims and graphics about brain development and immune health in their marketing and labeling for the Products, Defendants deliberately fetch a price premium from consumers, in violation of the federal regulations and California statutes.

62. Dietary needs for children under two are also different from those of adults because the optimal diet for children under two also must address needs beyond mere nutrition, such as developing neural pathways in the brain to establish healthy eating habits and developing gross and fine motor skills. The USDA-recommended diet for children under two includes nutrient-dense foods that promote exposure to new flavors and textures. Dietary Guidelines for Americans, 2020-2025. 9th Edition. December 2020. Available at DietaryGuidelines.gov (hereinafter "USDA Dietary Guidelines"). The Dietary Guidelines emphasize that the period of 0-24 months "is key for establishing healthy dietary patterns that may influence the trajectory of eating behaviors and health throughout the life course…Children in this age group consume small quantities of foods, so it's important to make every bite count!" Dietary Guidelines at 53. The AAP also stated in their clinical report, "…in the case of toddlers, developing taste preferences for a mixed diet is ideal."[5] By making nutrient content claims on its packages' front labels, Defendants mislead consumers into believing foods for children under two should be purchased based on the quantities of the listed nutrients, when other considerations are just as, or more, important.

---

[5] *Id.*

63. The Guidelines also recommend children "younger than age 2" completely "[a]void foods and beverages with added sugars." Dietary Guidelines at 61. Enfagrow PREMIUM Toddler Nutritional Drink and Enfagrow NeuroPro Toddler Nutritional Drink each have 2 grams of added sugars.

64. For these reasons, Defendants marketing the Products as providing physical health benefits for toddlers being a healthful and safe source of nutrients for babies and toddlers is unlawful and intended to fetch a price premium from consumers.

65. Defendants' marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

a. Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

b. Section 110395, which makes it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food; and

c. Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

66. Defendants' marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

a. Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

b. Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

c. Section 110765, which makes it unlawful for any person to misbrand any food; and

d. Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

67. Defendants have violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including, but not limited to, 21 C.F.R. §§ 101.13(b), 101.13(c), 101.54(e), and 104.20, which have been incorporated by reference in the Sherman Law, by labeling and marketing the Products—foods intended for children under two years of age—with impermissible nutrient content claims and fortification-related representations, rendering the products misbranded as labeled and sold.

68. Defendants' unlawful labeling and marketing allowed Defendants to position the Products as a premium nutritional option in the toddler drink category, thereby increasing demand and enabling Defendants to charge and collect higher retail prices than would prevail absent the unlawful labeling scheme. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendants have done on the Product labels.

69. Plaintiffs and Class members were harmed financially because they paid a price premium for the Products—i.e., more than they would have paid in a lawful, properly labeled market—or would have purchased less expensive alternatives. By misbranding the Products through including nutrient content claims and prohibited fortification representations on the labels, Defendants are able to both increase their sales and retain more profits from Plaintiffs and Class

members.

70. Defendants engaged in the practices complained of herein to further their private interests of: (i) increasing sales of their Products while decreasing the sales of competitors' products that do not make unlawful nutrient content claims, and/or (ii) commanding a higher price for the Products because consumers will pay more for them due to consumers' demand for premium products for their children.

71. The market for toddler food and drink products continues to grow, and because Defendants know prices depend on the nutrient content claims on the Product labels, Defendants have an incentive to continue to make such unlawful representations.

72. Defendants continue to launch new product lines with nutrient content claims to maintain their competitive edge, making it likely that Defendants will continue to misbrand and unlawfully advertise their Products.

**<u>Plaintiffs' Experiences</u>**

**Plaintiff Chelsea Garland**

73. Plaintiff Garland is a California citizen residing in San Diego, California.

74. In or around May 2023, and for about six (6) months thereafter, Plaintiff Garland purchased the Products for her then one (1) year old child from Target, Vons, Walmart, Ralphs, and/or Albertsons in California..

75. At the time of Plaintiff Garland's purchases, Defendants were selling the Products with labeling and marketing that included nutrient-content and fortification-related representations prohibited for foods intended for children under two years of age under FDA regulations incorporated into California law, rendering the Products misbranded as labeled and sold.

76. As a result of Defendants' unlawful nutrient content claims, the

Products have a lower value to Plaintiff Garland.

77. Plaintiff Garland paid money for the Products at retail prices that included a price premium attributable to Defendants' unlawful labeling and marketing. Absent Defendants' unlawful labeling and marketing, Plaintiff Garland would not have purchased the Products, would have purchased an alternative product, or would have paid less for the Products. Plaintiff Garland seeks restitution of the amount she overpaid.

**Plaintiff Estelita Rey**

78. Plaintiff Rey is a California citizen residing in Valley Village, California.

79. In or around 2022, and for about one (1) year thereafter, Plaintiff Rey purchased Enfagrow for her then one (1) year old child from Target and other retailers in California.

80. At the time of Plaintiff Rey's purchases, Defendants were selling the Products with labeling and marketing that included nutrient-content and fortification-related representations prohibited for foods intended for children under two years of age under FDA regulations incorporated into California law, rendering the Products misbranded as labeled and sold.

81. As a result of Defendants' unlawful nutrient content claims, the Products have a lower value to Plaintiff Rey.

82. At the time of Plaintiff Rey's purchases, Defendants were selling the Products with labeling and marketing that included nutrient-content and fortification-related representations prohibited for foods intended for children under two years of age under FDA regulations incorporated into California law, rendering the Products misbranded as labeled and sold.

83. Plaintiff Rey paid money for the Products at retail prices that included a price premium attributable to Defendants' unlawful labeling and marketing. Absent Defendants' unlawful labeling and marketing, Plaintiff Rey would not

have purchased the Products, would have purchased an alternative product, or would have paid less for the Products. Plaintiff Rey seeks restitution of the amount she overpaid.

**Plaintiff Zachary Williams**

84. Plaintiff Williams is a California citizen residing in Highland, California.

85. In or around October 2022 and about two (2) to three (3) times per month for about six (6) months thereafter, Plaintiff Williams purchased the Products for his then one (1) year old child from Albertsons in California.

86. As a result of Defendants' unlawful and misleading nutrient content claims, the Products have a lower value to Plaintiff Williams. Plaintiff Williams paid money for the Products at retail prices that included a price premium attributable to Defendants' unlawful labeling and marketing. Absent Defendants' unlawful labeling and marketing, Plaintiff Williams would not have purchased the products, would have purchased an alternative product, or would have paid less for the Products. Plaintiff Williams seeks restitution of the amount he overpaid.

## CLASS ACTION ALLEGATIONS

87. Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

88. The Class is defined as:

> **Class**: All persons in the State of California who purchased the Products between 2021 and the present.

89. Excluded from the Class are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal the Class and should be expanded or otherwise modified.

90. Numerosity: Although the exact number of Class members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court. The Class members are readily identifiable from information and records in Defendants' possession, custody, or control.

91. Typicality: Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class members, purchased the Products designed, manufactured, and distributed by Defendants. The representative Plaintiffs, like all Class members, have been injured by Defendants' misconduct in that they have incurred the cost of purchasing the Products. Furthermore, the factual bases of Defendants' misconduct are common to all Class members and represent a common thread resulting in injury to the Class.

92. Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class which predominate over any question affecting Class members individually. These common legal and factual issues include:

(a) Whether, during the Class Period, the Products have been labeled and marketed in California with nutrient-content claims and/or fortification-related representations prohibited for foods

intended for children under two years of age under FDA regulations incorporated into California law

(b) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products during the Class Period have been deceptive and/or unlawful;

(c) Whether Defendants' actions violate Federal and California regulations, statutes, and laws invoked herein;

(d) Whether labeling the Products with unlawful nutrient content claims causes the Products to command a price premium in the market as compared with similar products that do not make such unlawful claims, and if so, the amount of that price premium;

(e) Whether Plaintiffs and Class members lost money as a result of Defendants' alleged unlawful conduct by paying more than they otherwise would have paid for the Products, or by purchasing the Products instead of alternatives;

(f) Whether Defendants' engaged in the behavior knowingly, recklessly, or negligently;

(g) The amount of profits and revenues earned by Defendants as a result of the conduct; and

(h) Whether class members are entitled to restitution and other equitable relief and, if so, what is the nature (and amount) of such relief.

93. Adequate Representation: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained attorneys experienced in the prosecution of class actions, and Plaintiffs intend to vigorously prosecute this action.

94. Predominance and Superiority: Plaintiffs and the Class have all

suffered, and will continue to suffer, harm due to Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class members' claims, it is likely only a few Class members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class members will continue to incur harm, and Defendants' misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation because it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

**Violation of California's Unfair Competition Law,**

**Cal. Bus. & Prof. Code § 17200, *et seq.***

**(On behalf of the Class)**

95. Plaintiffs incorporate by reference each allegation set forth above.

96. Plaintiffs bring this cause of action individually and on behalf of the Class.

97. California's Unfair Competition Law, California Business & Professions Code § 17200 *et seq.* (the "UCL") prohibits "unfair competition" including any "unlawful, unfair, or fraudulent business practice" and "unfair, deceptive, untrue or misleading advertising." Defendants have engaged, and continue to engage, in conduct which violates the statute's "unlawful" prong.

98. Defendants have engaged, and continue to engage, in unlawful business practices by labeling, marketing, and selling the Products—foods intended for children under two years of age—with nutrient-content claims and fortification-related representations prohibited by federal statutes and FDA

regulations incorporated into California law, thereby rendering the products misbranded as labeled and sold.

99. Defendants' unlawful conduct includes, without limitation, violations of the following laws: (i) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (ii) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110665, 110760, 110765, and 110770; and (iii) and federal misbranding provisions regulating the advertising and branding of food in 21 U.S.C. § 343, *et seq*. and FDA regulations, including but not limited to 21 C.F.R. §§ 101.13(b), 101.13(c), 101.54(e), and 104.20, which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

100. Plaintiffs and Class members suffered injury in fact and lost money as a result of Defendants' unlawful conduct because they paid money for the Products at prices that included a price premium attributable to Defendants' unlawful labeling and marketing. Absent Defendants' unlawful labeling and marketing, Plaintiffs and Class members would have declined to purchase the Products, purchased an alternative product, or paid less for the Products.

101. Defendants engaged in these unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq*. of the California Business and Professions Code.

102. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

103. As a direct and proximate result of such actions, Plaintiffs and the Class have suffered, and continue to suffer, injury in fact and have lost money

and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of the Court. In particular, Plaintiffs and those similarly situated paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price which they would have paid but for Defendants' unlawful and unfair labeling. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

104. As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of the Court.

105. Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including restitution for the price premium they and others paid to Defendants due to Defendants' conduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct. Plaintiffs and the Class similarly lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the Sherman Law (Articles 3 and 6) and the Federal laws and regulations referenced herein do not provide a direct cause of action, so Plaintiffs and the Class must allege those violations as predicate acts under the UCL to obtain relief.

106. Plaintiffs also seek equitable relief, including restitution, with respect to their UCL unlawfulness claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event such causes of action do not succeed. Plaintiffs and the

Class may be unable to obtain monetary or declaratory relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described herein, but the UCL does not require individualized proof of deception or injury by absent Class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient but requiring certification of UCL claim for entire class).

107. Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration the above-described trade practices are unfair, and/or unlawful.

**<u>SECOND CAUSE OF ACTION</u>**

**For Unjust Enrichment**

**(On Behalf of the Class)**

108. Plaintiffs incorporate by reference each allegation set forth above.

109. Plaintiffs bring this cause of action on behalf of themselves and the Class.

110. Defendants have received and retained a benefit from Plaintiffs and Class Members through the sale of the Products as labeled and marketed, and inequity has resulted.

Defendants have been unjustly enriched because they obtained revenues from Plaintiffs' and Class members at retail prices that included a price premium attributable to Defendants' unlawful labeling and marketing of the Products, including the use of prohibited nutrient-content claims and fortification-related representations for foods intended for children under two years of age, rendering the Products misbranded as labeled and sold.

111. Equity and good conscience require Defendants to make restitution to Plaintiffs and the Class of the amount of the price premium/overpayment Defendants obtained as a result of the challenged conduct. Plaintiffs and the Class seek restitutionary relief, including restitution of the overpayment.

112. Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution of profits to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

113. Plaintiffs, therefore, seek an order requiring Defendants to pay non-restitutionary disgorgement of profits and make restitution to them and other members of the Class.

## RELIEF REQUESTED

114. Plaintiffs seek, on behalf of themselves and the Class, equitable monetary relief under the UCL's unlawful prong, including restitution of the price premium/overpayment obtained by Defendants through the sale of the Products as labeled and marketed. Because the Sherman Law and the federal labeling statutes and regulations referenced herein do not provide a direct private right of action for the relief sought, Plaintiffs plead those violations as predicate "unlawful" acts under the UCL to obtain restitution.

115. Plaintiffs, on behalf of themselves and all others similarly situated, further request the Court enter judgment against Defendants, as follows:

(a) An order certifying the proposed Class, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

(b) An award to Plaintiffs and the Class for equitable monetary relief, including, without limitation, restitution and disgorgement of all money Defendants improperly acquired

from Plaintiffs and Class Members as a result of their unlawful business practices.

(c) Any and all remedies provided pursuant to the causes of action and statutes alleged herein;

(d) Plaintiffs seek, as appropriate, a declaration that Defendants' challenged labeling and marketing practices are unlawful.

(e) A declaration Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products or make full restitution to Plaintiffs and the Class;

(f) An award of attorneys' fees and costs, as allowed by law;

(g) An award of pre-judgment and post-judgment interest, as provided by law;

(h) Leave to amend the Complaint to conform to the evidence produced at trial; and

(i) Such other relief as may be appropriate under the circumstances.

Dated: December 22, 2025

Respectfully submitted,

Capstone Law APC

By: /s/ *Cody R. Padgett*

Cody R. Padgett
Shahin Rezvani

Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and Southern District of California Local Rule 38.1, Plaintiffs hereby demand a trial by jury of all issues in this action so triable.

Dated: December 22, 2025

Respectfully submitted,

Capstone Law APC

By: /s/ *Cody R. Padgett*
Cody R. Padgett
Shahin Rezvani

Attorneys for Plaintiffs